## Pearlman *v.* Metropolitan Life Insurance Company, Appellant.

Argued September 27, 1939.  Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*D. C. Jennings,* for appellant.

*John E. Evans, Jr.,* of *Margiotti, Pugliese, Evans & Buckley,* for appellee.

OPINION BY MR. JUSTICE STERN, November 27, 1939:

This case involves the interpretation of the phrase "totally and permanently disabled" as used in two insurance policies issued to plaintiff by defendant. Plaintiff brought two suits which, by order of court, were tried together. The one claimed benefits under the two policies for the period from April 22, 1935, to October 22, 1936, and for a return of the premiums which he had paid for the years 1935 and 1936. The other claimed disability payments for the period from October 22, 1936, to December 22, 1937, and for a return of the premiums paid for 1937. Verdicts were recovered by plaintiff and the court overruled defendant's motions for judgments n. o. v. and for a new trial.

Plaintiff owned and managed a retail men's and women's furnishing store. Taken sick with diabetes and a nervous disorder known as neuro circulatory asthenia, he was compelled to cease work after April 22, 1935. During the three months from April 3 to July 4, 1936, he was in and about his store for two or three hours a day, mainly upon the recommendation of his physician who thought that a moderate amount of labor might have a beneficial psychological effect. The experiment, however, was unsuccessful, and, except for the latter part of 1937 when he made a similar effort, plaintiff had not resumed work when the second suit was started on December 20, 1937. .

There was sufficient evidence offered by plaintiff of permanent and total disability to take the case to the jury, and therefore defendant's motions for judgments n. o. v. were properly overruled. While the testimony of plaintiff's physicians was somewhat indefinite in regard to the likely permanency of his disability, it amounted in effect to an expression of opinion on their part that he would probably not recover from his illness. As for the fact that he was able for three months in the spring of 1936 to do at least some work, this represented merely a trial effort suggested by the doctor for therapeutic purposes, and as plaintiff found that he was obliged to relinquish the attempt this interval in his enforced idleness would not, from a legal standpoint, impair the totality of his disability: *Kramer v. Travelers Insurance Co.*, 111 Pa. Superior Ct. 367, 370; *Eisenhauer v. New York Life Insurance Co.*, 125 Pa. Superior Ct. 403, 406, 407.

Defendant's rule for a new trial requires more favorable consideration. It is based upon alleged error of the trial judge in instructing the jury as to what constitutes total disability, and in the exclusion of evidence regarding plaintiff's working and his physical condition subsequent to December 22, 1937.

On the question of total disability, the trial judge charged the jury: "The term 'total disability' is not used in a sense of absolute helplessness, mental or physical, but rather as an inability of the insured to do a greater portion or substantial part of his work or duty. If he is unable to do a substantial part—the greater part—of his ordinary work, that is a total disability. On the other hand, if he is just disabled from doing the lesser portion of his work, that is not total disability." This is exactly the charge which was disapproved in *Cooper v. Metropolitan Life Insurance Co.*, 317 Pa. 405, where the policies provided that disability payments were to be made if the insured should become wholly disabled "from engaging in any and every occu-

pation or employment for wage or profit." (In the present case the phrase used is: "totally and permanently disabled . . . so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit".) The court there said, in an opinion by the present Chief Justice (pp. 407-408) : "It should be clear that disability to engage in *any* business or occupation does not mean disability merely to carry on the same business or occupation that he had previously been engaged in. . . . A reasonable interpretation of the words of the policy is, that the total disability to engage in any occupation or work for compensation or profit which is insured against, means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing." Of course, as was there further pointed out, this does not mean that the insured must be a helpless invalid in order to become entitled to benefits under such a policy, nor is he barred from recovery because he may be able to perform a few trivial and desultory acts or light work of a limited character and at irregular intervals, but it does mean that it is not enough for the insured to show that he is unable to do a substantial part of his ordinary work. When the learned trial judge's attention was called to the matter he stated that he considered that what he had told the jury was substantially the same as saying that total disability was such as would "prevent the insured from . . . carrying on any gainful business or occupation and his performing . . . an essential part of the work incident thereto." But the two interpretations are not "substantially the same" but wholly different, and it would necessarily be a matter of conjecture as to which version the jury accepted: *Silvano v. Metropolitan Life Insurance Co.,* 135 Pa. Superior Ct. 260, 262, 263.

The trial of the two actions was held in November, 1938. Plaintiff was asked in cross-examination whether he had not been working since the first of January, 1938.

This was objected to on the ground that his claim was for disability payments only until December 22, 1937, and that his condition since that time was immaterial. One of his witnesses was his sales clerk, who was asked in cross-examination whether plaintiff had not been back in the store since January, 1938. The same question was also asked of plaintiff's brother who had taken over the management of the store. Plaintiff's two attending physicians were each asked on cross-examination whether they knew what plaintiff had been doing since January 1, 1938. The learned trial judge sustained objections to all these questions, as well as to the interrogation of a physician regarding the condition in which he found plaintiff upon an examination made by him on behalf of defendant on November 14, 1938, a few days before the trial. These rulings raise the question whether plaintiff would be entitled to benefits for permanent disability if defendant were able to prove that at the time of the trial he was well and had returned to work.

The policies in suit provide that "upon receipt by the Company . . . of due proof . . . that the insured has . . . become totally and permanently disabled . . . and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability, (1) waive the payment of each premium falling due under said policy . . ., and (2) pay to the insured . . . a monthly income of $10 for each $1,000 of insurance. . . . Such . . . payments shall begin as of the date of the commencement of such disability. . . . Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any

work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said policy. . . ."

Confusion in dealing with the question as to what constitutes permanent disability is frequently the result of a failure to distinguish between the *plain meaning* of permanency on the one hand and the legal requirements for *proof* of permanency on the other. Whether a person be disabled for days, months or years, if he ultimately recovers he has not been *permanently* disabled. Disability is permanent only when it endures for life. If plaintiff, who was forty-four years of age, was disabled until he was forty-six, but thereafter recovered and returned to work, he was not permanently disabled. Indeed, it would be a linguistic absurdity to say of a person that he was *permanently disabled for two years*. These policies are not health and accident policies designed to give relief to the insured during temporary periods, from time to time, in which he may be incapacitated for working, but are intended to provide protection only in case of the more grievous condition of total and permanent disability.

A wholly different problem is presented when the question concerns the *proof* of the permanency of a disability. Physicians, whatever their professional learning and skill, cannot always make reliable prognostications, for in our age science is constantly devising methods of overcoming diseases formerly considered incurable. Therefore, if the insured had to establish the fact of permanency of disability to a degree of absolute certainty, no benefits would be recoverable until his death had furnished the only indubitable proof. Such a requirement would defeat the very object of the insurance, which is to make the benefits immediately available to the insured and provide him with the wherewithal to live while deprived of his wages or earnings.

Recognizing this fact, the courts have uniformly held that it is necessary for the insured to prove only that he is suffering from a disability which is reasonably *likely* to endure for the remainder of his life; this he may do, for example, by the testimony of physicians expressing professional opinions to that effect.

Because it would be both unjust and impractical to withhold benefits merely because time may show that a disability at first seemingly permanent is not so in fact, it is usual for policies such as those here involved to contain a provision whereby payments are to be made if the disability has continued uninterruptedly for a certain specified time—in the present instance three months—and if due proof of totality and permanency is furnished, but subject to the condition that proofs of the continuance of the disability shall be produced from time to time and that the payments will be discontinued if in fact the disability ceases and the insured becomes able to return to work. Such a provision does not mean that whenever a disability lasts for three months it is to be deemed "permanent" within the intendment of the policy, but merely that, if there has been a continuance of the disability for such minimum period, *and if, also, due proof of its likely permanency is furnished,* the company will commence making payments (beginning as of the date of the commencement of such disability) on the provisional supposition that the disability is in fact a permanent one.[1] Thus the

---

[1] In *Lewis v. Metropolitan Life Insurance Co.,* 142 So. 262 (La. App.), it is said: "The period of three months specified by the contract is doubtless for the purpose of preventing and relieving the insurer of the burden and expense of having to consider and investigate numberless premature claims. After total disability has existed for three months the illness or disease causing it has ordinarily reached a stage where a prognosis as to its permanency may be made. The existence of total disability for a period of three months does not raise a presumption that it will be permanent but it has existed for a sufficient length of time to warrant consideration and investigation to determine the question of its permanency."

insured may gain the benefit of his apparent condition while it lasts, but he cannot be given the benefit of the doubt when the reality is established. If, therefore, the company, being dissatisfied with the proofs furnished for that purpose, requires the insured to establish permanency of disability by evidence in court at a trial of the issue, and it is then shown that the disability was not a permanent one, however much it may have seemed so originally, no payments are recoverable, for a disability ended before proof of it is made could not have been a permanent one.

There is no warrant for denouncing as unjust the fact that, if a suit on a policy came to trial while the insured was still disabled, he might obtain disability payments by proving a then existing likelihood of permanency, whereas, if trial were not had until after the disability had ceased, he would be precluded from recovery. This would result only because the truth became better ascertainable at the later period; recovery at an earlier trial would have been upon the basis of an alleged fact then apparently true but subsequently found to be untrue. In the present case, if defendant refused to pay benefits because it did not consider that the proof submitted by plaintiff established a reasonable likelihood of his permanent disability, it should have been given the opportunity at the trial to show, if it could, that its refusal was justified because plaintiff, in fact, had not been permanently disabled.

The views here expressed have been adopted by the courts in practically every jurisdiction in the United States,[2] and at least foreshadowed in our own.

---

[2] *Metropolitan Life Ins. Co. v. Blue,* 222 Ala. 665, 133 So. 707; *Job v. Equitable Life Ins. Co. of Iowa,* 133 Cal. App. 791, 22 Pac. (2d) 607; *Cassens v. Metropolitan Life Ins. Co.,* 114 Fla. 659, 154 So. 522; *Steffan v. Bankers Life Co. of Iowa,* 267 Ill. App. 248; *Hawkins v. John Hancock Mutual Life Ins. Co.,* 205 Iowa 760, 218 N. W. 313; *Maresh v. Peoria Life Ins. Co.,* 133 Kans. 191, 299 Pac. 934; *Prudential Insurance Co. of America v. Bond,* 261

In *Hollobaugh v. Peoples' Mutual Accident Insurance Association,* 138 Pa. 595, the insured was incapacitated for several months but it was held that this did not entitle him to recover under a contract which, as interpreted by the court, limited the payment of benefits to injuries of a permanent character only.

In *Becker v. Prudential Insurance Co. of America,* 124 Pa. Superior Ct. 138, it was held proper for the plaintiff to prove total and permanent disability not only to the time of bringing suit but also to the time of trial, as (page 144) "otherwise the defendant might have argued to the jury that while the disability might have been total, it had not been shown to be permanent and continuous." By the same token it would appear proper for a defendant to prove that there had been a cessation of the disability prior to the trial, in order to show that it was not in fact permanent.

In *Garabedian v. Metropolitan Life Insurance Co.,* 135 Pa. Superior Ct. 320, the insured claimed total disability from June 15, 1936, to March 22, 1937, and he did not pretend, by the offer of any evidence, that the

Ky. 808, 88 S. W. (2d) 988; *Lewis v. Metropolitan Life Ins. Co.,* 142 So. 262 (La. App.); *Brod v. Detroit Life Ins. Co.,* 253 Mich. 545, 235 N. W. 248; *Shipp v. Metropolitan Life Ins. Co.,* 146 Miss. 18, 111 So. 453; *Ginell v. Prudential Ins. Co. of America,* 237 N. Y. 554, 143 N. E. 740, reversing 200 N. Y. Supp. 261; *MacKenzie v. Equitable Life Assurance Society,* 251 N. Y. Supp. 528; *Mitchell v. Equitable Life Assurance Society,* 205 N. C. 721, 172 S. E. 497; *Rose v. New York Life Ins. Co.,* 127 Ohio St. 265, 187 N. E. 859; *Grenon v. Metropolitan Life Ins. Co.,* 52 R. I. 453, 161 Atl. 229; *Metropolitan Life Ins. Co. v. Noe,* 161 Tenn. 335, 31 S. W. (2d) 689; *Home Benefit Association v. Brown,* 16 S. W. (2d) 834 (Tex. Civ. App.); *Richards v. Metropolitan Life Ins. Co.,* 184 Wash. 595, 55 Pac. (2d) 1067. See however, *Penn Mutual Life Ins. Co. v. Milton,* 160 Ga. 168, 127 S. E. 140; *Maze v. Equitable Life Ins. Co. of Iowa,* 188 Minn. 139, 246 N. W. 737; *Laupheimer v. Massachusetts Mutual Life Ins. Co.,* 224 Mo. App. 1018, 24 S. W. (2d) 1058; *Eastep v. Northwestern National Life Ins. Co.,* 114 Neb. 505, 208 N. W. 632; *Wenstrom v. Aetna Life Ins. Co.,* 55 N. Dak. 647, 215 N. W. 93.

disability existed after the latter date. It was held that he could not recover, the court saying (pp. 325-326): "Where, as here, the proofs submitted to the insurer prior to the institution of suit, and the evidence adduced at the trial, show that the disability was never considered more than temporary, and at the time of trial and even prior to the institution of suit the insured had admittedly recovered, it would require unwarranted violence to the plain language of the policies to hold that the insured was ever 'permanently disabled' within the meaning of the contract." [3]

The error into which the court below fell is indicated in the following quotation from its opinion refusing defendant's motion for a new trial: "During the three years of his total disability, Pearlman was suffering from a condition that was not transient when afflicted with the disease of diabetes, neuro circulatory asthenia, and a functional heart disturbance; and if the probabilities at the time appeared to physicians as a permanent disability, he is entitled to those installments of insurance which accrued at that time. It is this right to benefits for which Pearlman filed suit and for which he claimed. He is not permitted, under the law, to recover for any benefits which accrued after the time he filed

---

[3] There sometimes occurs a particular provision in a policy which requires special interpretation. Thus in *Losnecki v. Mutual Life Insurance Co. of New York*, 106 Pa. Superior Ct. 259, there was a clause that "if the insured shall be totally disabled as defined in this policy for a continuous period of not less than ninety days, such disability shall, during its further continuance, *be presumed to be permanent . . .*" The court apparently regarded this as establishing, not a factual, but a conclusive or irrebuttable presumption, and therefore, as the policy in effect defined permanent disability as one existing for ninety days, the insured might recover for each and every recurrence of disability of ninety days or more during the course of his lifetime. Whether this interpretation was right or wrong, the decision rested upon the clause limiting the ordinary meaning of the term "permanent," and has no bearing upon the policies here in suit.

suit. Any evidence as to his condition at that time would be immaterial, for the only issue before the court was whether he was totally and permanently disabled during the period from April 22, 1935, to December 22, 1937." This seems to indicate a belief on the part of the court that evidence as to plaintiff's condition after December 22, 1937, was not relevant because he was not claiming disability payments for such subsequent period. It loses sight of the fact that the object of the evidence was to show that he was not entitled to the benefits for the period for which he *did* claim, because, if defendant should succeed in establishing that plaintiff was restored to health and again managing his store, this would prove that the case was not one of permanent disability and therefore not within the coverage of the policies.

Judgments reversed and new trial granted.