## Kline *v.* State Employes' Retirement Board, Appellants.

Argued September 24, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William M. Rutter,* Deputy Attorney General, with him *H. J. Woodward, Raymond C. Miller,* Deputy Attorneys General, and *James H. Duff,* Attorney General, for appellant.

*John Y. Scott,* with him *John H. Fertig,* for appellee.

OPINION BY MR. JUSTICE LINN, October 30, 1945:
This was a proceeding in mandamus brought to require the State Employes' Retirement Board [1] "(1) To

---

[1] Created by and for the purpose of administering the State Employes' Retirement Act of June 27, 1923, P. L. 858, as amended, 71 PS 1731, et seq.

reinstate and pay the 'member's annuity' of your petitioner, of $10.09⅓ per month from October 31, 1938, for the remainder of his life, or to the effective date of the grant of a retirement allowance for retirement not voluntarily; and (2) To grant to your petitioner a retirement allowance by reason of his discontinuance from service not voluntarily from November 25, 1939, for the remainder of his life, calculated as of his age on November 25, 1939, the date upon which application therefor was made, . . ."

The Board moved to quash the alternative writ. The motion was dismissed in an opinion written by Judge WOODSIDE: 54 Dauphin Co. Rep. 379. The defendant then answered the petition. At the pre-trial conference it was agreed that the parties should stipulate the questions to be passed on. After hearing, the court ordered the Board "to pay . . . the annuity payments to which we have found him to be entitled in the amount provided by law." The order was supported by an opinion also written by Judge WOODSIDE: 56 Dauphin Co. Rep. 134. His discussion of the subject in those opinions makes it unnecessary now to deal with it at length. We are not impressed by the arguments made on behalf of the appellant Board.

Plaintiff was born November 2, 1882, and entered the service of the State March 16, 1899, becoming a member of the State Employes' Retirement System as of January 1, 1924, pursuant to the statute. The Board certified him as physically disabled and granted a disability retirement allowance on May 15, 1928: section 12 (1), 71 PS 1742. He received this disability retirement allowance until October 31, 1938, when it was discontinued by an order of the Board pursuant to section 12 (2) of the Act, 71 PS 1742.

1. On November 24, 1939, plaintiff applied for a retirement allowance pursuant to section 11, 71 PS 1741. His application was refused and this suit followed.

Section 12 (5) provides that a member retired for disability shall receive "(a) a *member's annuity* which

shall be the actuarial equivalent of his or her accumulated deductions; and (b) a *State annuity* which, together with the member's annuity, shall be sufficient to produce a retirement allowance of . . ." Section 1 (71 PS 1731) contains the following definitions:

"20. 'State Annuity' shall mean payments for life derived from contributions made by the Commonwealth of Pennsylvania as provided in this act.

"21. 'Member's Annuity' shall mean payments for life derived from contributions made by the contributor as provided in this act.

"22. 'Retirement Allowance' shall mean the State annuity plus the member's annuity."

Section 12 (2) authorized the Board to require a disability annuitant while still under the superannuation retirement age to submit to medical examination once [2] each year; it further provided that if the physician certifies, and the Board agrees, that the annuitant is no longer incapacitated for duty, or is able to engage in gainful occupation, "then the amount of State annuity shall be discontinued."

It will be observed that while retirement allowance is defined as the total of the State annuity and the member's annuity, the Board's authority to discontinue, in the circumstances stated, related not to the entire allowance, but only to the element known as the State annuity. As the plaintiff was not restored to active service, there was no authority to discontinue payment of the member's annuity. The Act does provide, section 12 (3), that if the disability annuitant refuses to submit to the physical examination for a specified time, "all his or her rights in and to the State annuity constituted by this act shall be forfeited." Plaintiff submitted to the examination and therefore did not forfeit the allowance. The learned Court was right in holding that plaintiff was entitled to the member's annuity for life from the date at which that annuity was discontinued by the Board.

_____

[2] After this case arose, this section was amended by the Act of May 24, 1945, P. L. 950.

2. Section 11 (3) (a) (b) provides: "Should a member be discontinued from service, not voluntarily, after having completed ten years of total service or voluntarily after having completed twenty-five years of total service, but before reaching superannuation retirement age, he or she shall be paid as he or she may elect as follows:

"(a) The full amount of the accumulated deductions standing to the credit of his or her individual account in the annuity savings account; or

"(b) An annuity of equivalent actuarial value to his or her accumulated deductions, and in addition, a State annuity having a value equal to the present value of a State annuity beginning at superannuation retirement age, calculated in accordance with the provisions and with the privileges of the same options provided for in sections thirteen and fourteen of this act with respect to State annuities for superannuation retirement."

The plaintiff, as appears from the reported opinions of the learned court below, was "discontinued from service, not voluntarily." With respect to the State annuity specified in section 11 (3) (b), supra, we quote the following statement from Judge WOODSIDE'S opinion: "The amount of this state annuity is found by determining 'the present value' of a state annuity beginning at superannuation retirement age calculated as provided in Sections 13 and 14 of the Retirement Act.

"Section 13, Paragraph 2 (b and c) of the Retirement Act, as amended (71 PS 1743) provides:

" '(b) A state annuity of one one-hundred-sixtieth (1-160) or one one-hundredth (1-100) of his or her final salary for each year of total service, etc., and (c) In addition thereto, if an original member of the retirement association, a further state annuity of one one-hundred-sixtieth (1-160) or one one-hundredth (1-100) of his or her final salary for each year of prior service, etc.'

"The state annuity is thus determined for the petitioner on the basis of his years of service as provided above. Age is not a factor in this calculation. This sum

being thus determined, must be reduced to 'present value'. 'Present value' refers to value on a certain date. As we see it that certain date is the date as of which payments of the state annuity are commenced. In this case the payments would commence as of November 25, 1939, the date of the application and it is the age of the applicant at the time of the application which determines the amount of the state annuity."

3. The Board presented another element of defense in the nature of setoff, asserting that plaintiff received disability allowance in excess of what he was entitled to receive, though he received only what the Board awarded. The Board contends that during part of the time for which he received this disability allowance he was not in fact disabled. The fact was not established but was assumed for the purposes of the decision below. There is no suggestion that plaintiff misrepresented any facts to the Board, nor is there any allegation of fraud. The Board contends that plaintiff should voluntarily have discontinued receiving the allowance or at least part of it. The Board admits it did not exercise its right to have plaintiff examined. Section 15 of the Retirement Act (71 PS 1745) provides: "A member's annuity, a State annuity, or a retirement allowance, granted under the provisions of this act shall be paid in equal monthly installments and shall not be increased, decreased, revoked, or repealed except as otherwise provided in this act." There was no action by the Board until it discontinued the retirement allowance in 1938. It is well settled that money, not legally due, but paid voluntarily cannot be recovered back: *Sebastianelli v. Prudential Ins. Co.*, 337 Pa. 466, 12 A. 2d 113; *Bausewine v. Phila. Police Pension Fund Assoc.*, 337 Pa. 267, 272, 10 A. 2d 446.

It has been repeatedly said that the retirement system creates a contract between the Commonwealth and all its officers and employes, who are members of the system: *Dom v. State Employes' Retirement Board*, 345 Pa. 489, 28 A. 2d 796; *Retirement Board of Allegheny County v.*

*McGovern,* 316 Pa. 161, 174 A. 400. In the *Dom* case we said, "Employment contracts containing provisions for retirement pay are liberally construed to effectuate the declared intention of the parties to pay additional compensation for services rendered in the past."

The order appealed from is affirmed.